UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Andre Winston,
    Plaintiff,

v.  09-2038

J.R. WALLS, Acting Warden at
Mt. Sterling Correctional Center, in his
individual and official capacities,
    Defendants.

Memorandum Opinion and Order

Before the court are Defendant J. R. Walls' summary judgment motion [27], Plaintiff Andre Winston's response [36], Defendant's reply [37] and Defendant's supplement [48]. Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56 and United States District Court Local Rule 7.1(D).

Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient

evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997)).

## Background

Plaintiff Andre Winston is an inmate currently incarcerated at Western Illinois Correctional Center. On February 9, 2009 he brought this lawsuit under 42 U.S.C. §1983 for violations of his civil rights. Specifically, Plaintiff alleges that Defendant Walls, the former Acting Warden of Western Illinois Correctional Center, violated his First Amendment rights by revoking Plaintiff's privilege to write his brother, Ray Winston, another Illinois Department of Corrections inmate. Defendant contends that he is entitled to qualified immunity because the revoking of correspondence privileges between Plaintiff and his brother by the Defendant did not violate any clearly-established constitutional rights.

## Defendant's Undisputed Material Facts[1]

1. Plaintiff is an inmate currently incarcerated at Western Illinois Correctional Center. (Complaint ¶2).
2. Plaintiff's biological brother, Ray Winston, is an inmate currently incarcerated at Pnckneyville Correctional Center. (Complaint ¶1).
3. On July 23, 2008, Defendant revoked correspondence privileges between Plaintiff and his brother, Ray Winston. (Complaint Exhibit A).
4. The revocation of correspondence privileges was due to inappropriate correspondence between Plaintiff and Ray Winston, resulting in the abuse of the privilege. (Exhibit A).

---

[1]Plaintiff concedes to Defendant's Undisputed Material Facts. See L. R. 7.1. Further, exhibits can be found attached to Defendant's memorandum of law [28].

2

5. The letter in question, sent from Mr. Winston to Plaintiff, contained, among other things, two references to the administration at Western Illinois Correctional Center as "devils" and refers to the court system as "white devils." (Exhibit B[2]).
6. Racial comments or other inflammatory comments could potentially incite, anger or a negative attitude in the recipient of such correspondence. (Defendant Walls's Responses to Plaintiff's First Interrogatories, p. 7, ¶10, hereto Exhibit C).
7. Racial comments or other inflammatory comments could also be used to further security threat group (gang) activity and as such, would compromise the safety and security of a correctional institution. (Exhibit C, p. 7, ¶10).
8. Correspondence between two inmates is a privilege and not a right. (Exhibit C, p. 7, ¶10 and Ill. Admin. Code §525.120(b)).
9. Since the privilege to correspond was abused, it was revoked to ensure the safety and security of a correctional institution. (Exhibit C, p. 3, ¶7).

Plaintiff's Additional Undisputed Material Facts

1. The Defendant may censor an inmate's non-privileged incoming or outgoing mail.
2. The Defendant revoked Plaintiff's privilege to correspond with his brother.
3. An incoming letter from Plaintiff's brother resulted in the revocation of correspondence privileges.
4. The letter in question proves it was Plaintiff's brother incoming mail remarks that caused Defendant's safety and security concerns.

Immaterial

1. Whether or not there was a "policy prohibiting inmate from using the term white devil inside their (sic) incoming mail..." is immaterial as to whether Plaintiff's First Amendment rights were violated.
2. Plaintiff's material fact number 2 is unintelligible.
3. Defendant counsel is not an expert as to what racial and inflammatory comments could potentially incite or anger different people.

---

[2]Defendant asserts that he is unable to attach a copy of the entire letter because Plaintiff has refused to produce the letter in question. Further Defendant asserts that a motion to compel production of the letter was pending with this court at the time he filed his summary judgment motion. The court notes that it ruled on Defendant's 10/2/09 motion to compel [21] on 10/28/09. Defendant further asserts that in summary, Plaintiff refused to produce the letter because he argues that if the letter was so important that it resulted in the revocation of correspondence privileges, then the Defendant should have kept a copy himself. However, the court notes that Plaintiff filed 2 pages of the letter on May 8, 2009 [10], well before Defendant's 10/2/09 motion to compel. Plaintiff filed only 2 pages and asserted that he was not given the final page or his brother forgot to mail it to him. Therefore Defendant had access to the letter in question.

4. Plaintiff's objection to an unidentified exhibit, noted in his number 6 fact, is an argument, not a fact.
5. Plaintiff's objection noted in his number 7 fact is an argument, not a fact.
6. Plaintiff's facts numbers 8 - 10 are arguments, not facts.

Discussion and Conclusion

Defendant argues that he is entitled to qualified immunity. Under Section 1983, a Defendant is entitled to qualified immunity from money damages for his discretionary actions if his conduct does not violate any clearly-established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, (1982). The test is purely legal, without regard to the subjective motivations of the defendant. *Harlow*, 457 U.S. at 818-19; *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Davis v. Scherer*, 468 U.S. 183, 191 (1984). Officials do not lose the immunity merely because they violate some statutory or administrative provisions of state law. *Davis,* 468 U.S. at 194. In fact, in order for a plaintiff to defeat a qualified immunity claim, he must prove that defendant has violated a constitutional right that was clearly established at the time of the alleged misconduct. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995). The burden of establishing the existence of such a clearly established constitutional right is on Plaintiff. *McGrath*, 44 F.3d at 570 citing *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988). He must point out a closely analogous case that establishes that he had a right to be free from the specific conduct alleged to violate the general constitutional right at issue. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). Plaintiff must also establish that the alleged violated rights were so clear that a reasonable official would understand that what he is doing at the time violates the right. *McGrath*, 44 F.3d at 570; *See also Anderson v. Creighton*, 483 U.S. 635 (1987). Defendant contends that he did not violate any clearly established constitutional right when he revoked Plaintiff's correspondence privilege with his brother, another inmate. Defendant asserts that to the contrary, the Supreme Court and the 7th Circuit have clearly held that the revocation was in fact constitutional. Plaintiff offers no closely analogous case that establishes he had a right to be free from the specific conduct alleged to violate his First Amendment right by revoking a privilege to correspond with his incarcerated brother and the court finds none. Therefore, Defendant is entitled to qualified immunity.

Furthermore, when a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The factors relevant in determining the reasonableness of the regulation at issue are 1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, 2) whether there are alternative means of exercising the right that remains open to prison inmates, 3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally, and 4) the absence of ready alternatives. *Id*. at 89-90. After enunciating the standard, the Supreme Court held that a prohibition on correspondence between inmates was reasonably related to valid correctional goals and did not unconstitutionally abridge the First Amendment rights of prison inmates. *Turner v. Safley*, 482 U.S. 78, 93 (1987).

Further, the 7th Circuit has held that the constitutionality of Ill. Admin. Code §525.120(b) cannot be doubted. See *Farrell v. Peters*, 951 F.2d 862, 863. The Illinois Admin. Code rule provides that "permission for committed persons to correspond between intra-state and inter-state correctional facilities shall require the approval of the Chief Administrative Officers of both facilities and shall be based on safety and security concerns." Ill. Admin. Code §525.120(b). Defendant asserts that the *Farrell* Court explained that, "[t]he potential dangers from correspondence among inmates in this age of prison gangs - some nationwide in extent - are obvious. *Id. citing United States v. Silverstein*, 732 F.2d 1338 (7th Cir. 1984). However, this court also notes that in *Farrell,* the Court held that Illinois prisoner failed to establish that denial of permission for him to correspond with his alleged "common-law" wife, who was an inmate of another Illinois prison, was arbitrary and in violation of his First Amendment rights; inmate gave no particulars as to why denial might have been arbitrary, and arbitrariness did not "leap out" since prisoners had been criminal confederates in pimping and prostitution before they were imprisoned. The facts in *Farrell* are not on point with the instant case. Nevertheless, Defendant is correct in that the 7th Circuit has held that the revocation was in fact constitutional. However, the revocation must be reasonably related to legitimate penological interests.

Here, Defendant contends the revocation of correspondence privileges was due to inappropriate correspondence between Plaintiff and Ray Winston, resulting in the abuse of the privilege. The letter [10] in question, sent from Ray Winston to Plaintiff, contained, among other things, two references to the administration at Western Illinois Correctional Center as "devils" and refers to the Court system as "white devils." Specifically, Plaintiff's brother said 1) "How can you Dre keep let (sic) these devils beat you at a game that you was (sic) born to win;" and 2) "Dre you don't got time for bull shit because your (sic) trying to fight these white devils in the court room." Defendant asserts that racial comments or other inflammatory comments could potentially incite anger or a negative attitude in the recipient of such correspondence. Racial comments or other inflammatory comments could also be used to further security threat group (gang) activity and as such, would compromise the safety and security of a correctional institution. First, the court finds the Defendant's rule is content neutral, it logically advances the goals of institutional security and safety identified by prison officials, and it is not an exaggerated response to those objectives. Clearly, Plaintiff's brother used a racial comment - "white." Plaintiff does not deny that fact. Using the word "white" alone to identify someone's race would not necessarily be inflammatory, but the manner and tone in which Plaintiff's brother used the term could potentially incite the recipient. Plaintiff argues that Defendant has no way of knowing what his brother meant when he used the word "devil" and that Defendant does not know whether he meant it as "evil." However, the court notes that generally devil means the major personified spirit of evil.

Federal judges may not interfere in the daily administration of state prisons barring substantial evidence that they have acted disproportionately to correctional needs. *Pell v. Procunier*, 417 U.S. at 827, 94 S.Ct. at 2806. Here, the court cannot find that Defendant acted disproportionately to correctional needs. The court finds the inflammatory comments could potentially incite, anger or a negative attitude in the recipient of the letter. As correspondence between two inmates is a privilege and not a right (Ill. Admin. Code §525.120(b) and since the

5

Defendant found that the privilege to correspond was abused and he revoked the privilege to ensure the safety and security of a correctional institution, the court finds the Defendant did not violate or abridge the Plaintiff's First Amendment right to free speech. As such, Defendant is granted summary judgment.

Further, the court notes that on March 19, 2010, the Clinical Services Supervisor at Plaintiff's place of incarceration advised him that his privilege to correspond with his brother has been reinstated. See docket entry [48].

It is therefore ordered:

1. Pursuant to Fed. R. Civ. Pro. Rule 56, Defendant's summary judgment motion [27] is granted. The Clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated in its entirety. Any pending motions are rendered moot. The parties are to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 30th day of September 2010

/s/ Michael P. McCuskey
_____
Michael P. McCuskey
Chief United States District Judge